IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES ANTHONY ASHE, JR.            :

                                     :

    v.                               :    Civil Action No. DKC 04-3115
                                          Criminal Case No. DKC 01-0063
                                     :

UNITED STATES OF AMERICA             :

                                     :

## MEMORANDUM OPINION

Presently pending and ready for resolution is a motion by Petitioner Charles Anthony Ashe, Jr. to vacate, set aside, or correct his sentence. (ECF No. 59). The issues have been fully briefed and the court now rules. For the reasons that follow, the motion will be denied.[1]

## I.  Background

On February 14, 2001, a grand jury returned a superseding indictment against Petitioner Charles Anthony Ashe, Jr. containing four counts: (1) possession with intent to distribute cocaine base, (2) possession with intent to distribute marijuana, (3) possession of a firearm by a convicted

---

[1]  Three other motions are also pending:  a motion for discovery filed by Ashe (ECF No. 59), a motion to dismiss the motion for discovery as moot filed by the government (ECF No. 65), and an unopposed motion to supplement filed by Ashe (ECF No. 68).  Because Ashe has now received the discovery he requested in his motion for discovery, his motion will be denied and the government's motion will be granted.  Ashe's motion to supplement will also be granted.

felon, and (4) possession of ammunition by a convicted felon. After a three-day jury trial, the jury convicted Ashe on all counts on September 21, 2001.

On January 2, 2002, Ashe was sentenced to 138 months of imprisonment on count one, 60 months of imprisonment on count two, 120 months on count three, and 120 months on count four, all concurrent. The court calculated the sentence under a mandatory Sentencing Guidelines framework, applying three adjustments for possession of a firearm in connection with a felony offense, obstruction of justice, and possession of a firearm with an obliterated serial number.

Ashe then appealed to the United States Court of Appeals for the Fourth Circuit. On appeal, Ashe made four arguments: (1) joinder of the drug, firearm, and ammunition offenses was improper and prejudicial; (2) two evidentiary rulings by this court were an abuse of discretion; (3) the district court improperly allowed testimony that the firearm he possessed was "inherently unlawful"; and (4) the court erred in denying a motion to suppress certain evidence found in Ashe's car. On March 27, 2003, the Fourth Circuit rejected all of Ashe's arguments and affirmed the conviction. *United States v. Ashe*, 62 F.App'x 446 (4th Cir. 2003). The Supreme Court denied Ashe's

petition for writ of certiorari on October 6, 2003. *Ashe v. United States*, 540 U.S. 889 (2003).

On September 29, 2004, the court received Ashe's petition under 28 U.S.C. § 2255. (ECF No. 59).[2] Roughly a week later, it also received a motion for certain discovery. (ECF No. 61). The government later moved to dismiss the discovery motion as moot, explaining that it had voluntarily provided Ashe with the two items he requested in his motion. (ECF No. 65). On March 1, 2005, the government then filed its response to Ashe's petition. Ashe replied on March 21, 2005 (ECF No. 67) and contemporaneously filed a motion to supplement his petition (ECF No. 68).[3]

## II. Standard of Review

Title 28 U.S.C. § 2255 requires a petitioner to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or

_____

[2] Before filing the petition, Ashe filed a motion for discovery pursuant to Federal Rule of Criminal Procedure 16, a motion for a grand jury transcript, and a motion for copy work at the government expense. All of these motions were denied.

[3] Since the time he filed his petition, Ashe also sought a sentence reduction based upon Amendment 706 to the Sentencing Guidelines. The court denied the motion on October 24, 2008. (ECF No. 77). The Fourth Circuit affirmed that decision on June 22, 2009. *United States v. Ashe*, 327 F.App'x 450 (4th Cir. 2009).

that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." A pro se movant such as Ashe is of course entitled to have his arguments reviewed with appropriate consideration. *See Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978). But if the Section 2255 motion, along with the files and records of the case, conclusively shows that he is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255(b).

## III. Analysis

Ashe raises three broad types of claims: several claims based on alleged ineffective assistance of counsel, two claims based on alleged prosecutorial misconduct, and one claim based on a purported violation of Ashe's Sixth Amendment rights. The court addresses each in turn.[4]

### A. Ineffective Assistance of Counsel

Ashe first contends that he received ineffective assistance of counsel. Such claims are governed by the well-settled

---

[4] In a memorandum attached to his original petition, Ashe states that "[i]ssues (2) through (7) need records maintained by the clerk of court in order to develop[] the necessary facts to meet the required standard of review to obtain collateral relief." Over the past four years, Ashe has received all of the discovery he has requested. Thus, if Ashe is asking for additional time and opportunity to develop further facts, that request must be denied.

standard adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* standard, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland*, 466 U.S. at 687. To demonstrate actual prejudice, he must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In applying *Strickland*, there exists a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *See id.* at 688-89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). Courts must judge the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted even had the attorney's performance been deficient. *See Strickland*, 466 U.S. at 697.

### 1. Failure to Call Ashe's Mother as a Witness

Ashe first faults his trial counsel for failing to call his mother as a witness, even though trial counsel allegedly assured him that she would indeed be called. According to Ashe, his mother would have explained how he came to possess the drugs, firearm, and ammunition in this case. Such an argument fails. Ordinarily, tactical decisions such as which witnesses to call are "virtually unchallengeable." *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009) (quotation marks omitted); *see also United States v. Orr*, --- F.3d ----, No. 09-3644, 2011 WL 722405, at *9 (8th Cir. Mar. 3, 2011) ("[W]e consistently have affirmed that a defense counsel's decision not to call a witness is a virtually unchallengeable decision of trial strategy." (quotation marks omitted)); *Hall v. Thomas*, 611 F.3d 1259, 1293 (11th Cir. 2010) ("[T]he decision concerning which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." (quotation marks omitted)); *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) ("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney."). Ashe has provided no reason to disregard that ordinary rule.

The affidavits provided by Ashe's mother provide two basic statements: (1) she placed the drugs in the console of the car

Ashe was driving after having "found" them; and (2) she lived in the basement of the house where the ammunition was found, and some of her estranged husband's belongings were in that room. Given the extraordinarily vague nature of the proffered testimony, counsel did not act unreasonably in failing to call her. The mother's testimony that she "found" the drugs, for instance, does nothing to dispel the notion that the drugs belonged to Ashe, particularly in light of Ashe's past distribution offense and given the fact that additional drugs were found in Ashe's home. Likewise, her indistinct suggestion that she (rather than Ashe) resided in the bedroom where additional drugs and ammunition were found notably omits any suggestion that she was responsible for the seized items (and was contradicted by an item bearing Ashe's name was found in the same drawer as the ammunition). Indeed, her proposed testimony does not actually suggest any person other than Ashe who allegedly possessed the drugs or the ammunition.

The weak and biased nature of the testimony suggests defense counsel appropriately declined to use it. A reasonable lawyer could conclude that a jury would be unlikely to give credence to a story told by Ashe's mother, who carries a degree

of inherent bias.[5]  *See, e.g.*, *Seymour v. Walker*, 224 F.3d 542, 556 (6th Cir. 2000) (noting inherent bias of proposed witness, defendant's sister, in explaining why counsel reasonably chose not to call her); *Bergmann v. McCaughtry*, 65 F.3d 1372, 1380 (7th Cir. 1995) ("As a matter of trial strategy, counsel could well decide not to call family members as witnesses because family members can be easily impeached for bias."). This is particularly so given that she would have offered the rather exceptional testimony that she simply stumbled upon a bag of drugs while leaving her home. *Cf. Thompson v. Nague*, 118 F.3d 1442, 1453 (11th Cir. 1997) (finding no prejudice from failure to call witnesses where "testimony was unbelievable and [the] witnesses were biased"). Offering such testimony could have undermined trial counsel's strategy of attacking the

---

[5]     Presenting a biased witness might have been especially problematic here, where defense counsel argued in closing arguments that the jury should focus heavily on the biases of the various witnesses. Indeed, he even relied on a mother's inherent bias in attacking the testimony of John Jones' mother. (*See* 09/21/2001 Tr. 71-72 ("John Jones has a weapon in his house. His mother found it. His mother comes to court and says, 'I'd never seen him with a gun before.' Well, okay. I'm sure he wasn't walking around saying, 'Hey, Mom, look at the 9mm I got. It's 17 inches long. What do you think Mom?' No. The mothers are the last to know.")). Trial counsel, in closing, also stressed to the jury that Ashe's case would have been substantially undermined if Ashe had called a witness who was impeached in any manner. That argument would have been an extraordinarily dangerous one to make had trial counsel chosen to put Ashe's mother on the stand.

government's case by noting its inconsistencies and placing responsibility for the firearm on another party, John Jones. "A fundamental reality of trial practice is that often, a weak witness or argument is not merely useless but, worse than that, may detract from the strength of the case by distracting from stronger arguments and focusing attention on weaknesses." *United States v. Terry*, 366 F.3d 312, 318 (4th Cir. 2004) (quotation marks and brackets omitted). Counsel reasonably declined to endanger his preferred strategy by declining to call Ashe's mother.[6]

## 2. Conflict of Interest

In a supplement to his Section 2255 motion, Ashe raises an additional claim related to his counsel's failure to call his mother as a witness: he asserts that the failure to call his mother created a conflict of interest. Although Ashe recognizes

---

[6] It does not matter that Ashe allegedly insisted on calling his mother. "It is by now well-established that in a criminal trial, defense counsel has the authority to manage most aspects of the defense without obtaining the consent of the defendant." *United States v. Chapman*, 593 F.3d 365, 367 (4th Cir. 2010). Thus, counsel may appropriately disregard his client's wishes when making a tactical decision (excluding certain decisions about basic rights not implicated here). *Id.* at 369 ("[T]he client's expressed disagreement with counsel's decision cannot somehow convert the matter into one that must be decided by the client. . . . The reasonableness of the tactical decision actually made by counsel . . . is not unreasonable simply because the client expressed a contrary view.").

9

that such an allegation would not present an ordinary conflict of interest case, he suggests there was nevertheless a conflict based on "counsel's personal interest."

An "essential aspect" of the right to effective assistance of counsel "is a lawyer unhindered by conflicts of interest." *United States v. Nicholson*, 475 F.3d 241, 248 (4th Cir. 2007) (quotation marks omitted). When a petitioner brings a claim based on a conflict of interest, such a claim is governed by the standard found in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), rather than the *Strickland* standard. *Nicholson*, 475 F.3d at 249. Under that standard, Ashe must show that his trial counsel operated under a "conflict of interest" and (2) that this conflict "adversely affected his lawyer's performance." *United States v. Nicholson*, 611 F.3d 191, 196 n.2 (4th Cir. 2010) (quoting *Cuyler*, 446 U.S. at 348)).

A conflict of interest is not the same as any conflict in the ordinary sense. Rather, Ashe must show that his interests "diverged from his attorney's with respect to a material factual or legal issue or to a course of action." *Stephens v. Branker*, 570 F.3d 198, 209 (4th Cir. 2009) (brackets and quotation marks omitted). These cases most often arise when, for example, counsel concurrently represents more than one defendant on the same criminal charge or where counsel has some relationship with

the prosecution.  Here, Ashe's conflicts with his attorney are more akin to disagreements over strategy and litigation decisions.  Where the disagreements do not entirely destroy the attorney-client relationship, such disagreements do not constitute legal conflicts of interests that establish ineffective assistance of counsel.  *See, e.g.*, *United States v. Reyes-Bosque*, 596 F.3d 1017, 1034 (9th Cir. 2010) (finding no conflict of interests were the attorney-client conflict "centered on the fact that [the client] was unhappy with counsel's performance"); *United States v. Fields*, 483 F.3d 313, 353 (5th Cir. 2007) ("Mere disagreement about strategic litigation decisions is not a conflict of interest."); *United States v. Jones*, 482 F.3d 60, 75 (2d Cir. 2006) (same).  As the United States Court of Appeals for the D.C. Circuit has explained:

> Leggett notes that the rift with his counsel was sufficiently severe to motivate counsel to request to withdraw, and that during an ex parte discussion with the court counsel acknowledged it was "difficult to focus on what's going on" when he was being "second-guessed on everything."  A client's difference of opinion regarding trial strategy hardly indicates that counsel is "actively representing conflicting interests."  Just as friction between a trial counsel and the court does not, as a matter of law, create a conflict of interest between counsel and client, so too the expected and usual rifts that develop between disappointed defendants and their

> counsel cannot be characterized as conflicts
> of interest.  Differences of opinion about
> the questions to pose to a witness or the
> argument to be made to the jury that do not
> amount to a breach of loyalty to the
> defendant are not "conflicts of interest."

*United States v. Leggett*, 81 F.3d 220, 227 (D.C. Cir. 1996) (citations omitted).  Although Ashe broadly alleges that his "trial counsel's personal bias and animosity toward him caused a breakdown in the adversarial system," he does not provide any support for such a broad proposition.  There was no conflict here.

### 3. Failure to Interview and Call Rosa Jones as a Witness

In addition to his mother, Ashe also says his lawyer should have interviewed and called Rosa Jones as a witness for the defense.  Jones, who was the grandmother of complainant Perry Jones, placed a 911 call that was used as evidence against Ashe at trial.  Ashe has not indicated what useful evidence Jones would have provided.  Indeed, he does not explain how her testimony would be even remotely relevant to his case.  Given that Ashe has not provided any suggestion that Jones was willing to testify and has not proffered the substance of Jones' proposed testimony, his claim necessarily fails because, at the very least, he cannot establish prejudice.  "[S]peculations as to what uncalled witnesses would have testified is too uncertain" to justify relief.  *Gregory v. Thaler*, 601 F.3d 347,

352-53 (5th Cir. 2010) (brackets omitted); *see also Armstrong v. Kemna*, 534 F.3d 857, 867 (8th Cir. 2008) (citing cases establishing that "[o]rdinarily, a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony . . . would be fatal to an ineffective assistance of counsel claim" (quotation marks omitted)).  Ashe has had several years to develop the record; during that time, he has not even offered a hint as to what Jones would say.  This claim must be denied.

### 4. Failure to Object During Closing Argument

Ashe also maintains that "trial counsel rendered substandard legal assistance where he failed to object to the prosecutor's remarks, during closing arguments, concerning the veracity of the trial witnesses."  Although Ashe does not state which specific statements he finds fault with, there were several statements made by the government during its rebuttal argument that directly addressed the credibility of the government's witnesses, including:

- Regarding Carl Stevenson:  "He told you the truth even though he made himself look bad."

- Regarding Perry Jones:  "He always tells the truth."[7]

---

[7]    The record indicates that the government was referring here to Perry Jones' consistent statements over the course of the case – not simply to any general tendency to be truthful.

13

- Regarding Maliqua Coppedge:  "She is not a liar.  She is disrespectful.  She is hostile.  She is reluctant.  But she didn't lie."

- Regarding all the witnesses:  "Every one of these witnesses, I submit to you, ladies and gentlemen, are telling the truth."

The Fourth Circuit thoroughly explained the concept of "vouching," or improper prosecution arguments regarding witness credibility, in *United States v. Johnson*, 587 F.3d 625, 632 (4th Cir. 2009):

> A prosecutor may not vouch for government witnesses during her closing argument. Vouching generally occurs when the prosecutor's actions are such that a jury could reasonably believe that the prosecutor was indicating a personal belief in the credibility of the witness. The rule against vouching exists because the prosecution's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

(citations and quotation marks omitted).

There might be circumstances where the failure to object to such vouching by the government could amount to ineffective assistance. *See, e.g.*, *Hodge v. Hurley*, 426 F.3d 368, 385 (6th Cir. 2005); *but see Hunt v. Smith*, 856 F.Supp. 251, 258 (D.Md. 1994) ("Deciding whether to interrupt an opponent's closing argument is a tactical decision, for, even if the objection is sustained and a curative instruction given, it might well draw

unwarranted jury attention to the comment, which is often better left to sit unnoticed."); *Arigbede v. United States*, 732 F.Supp. 615, 621 (D.Md. 1990) ("[D]ecisions concerning whether or not to raise objections in this context are matters of trial tactics and strategy, and not governed by the Sixth Amendment."). For various reasons explained below, however, none of the statements made by the government at trial amounted to improper "vouching." Consequently, counsel was not ineffective in failing to object.

As the Fourth Circuit has previously explained, the government's statement regarding "every one of [the] witnesses" was not improper. When a prosecutor uses the phrase "I submit," it indicates to the jury that the comments are argument, not personal belief. *United States v. Ollivierre*, 378 F.3d 412, 423 (4th Cir. 2004), *rev'd on other grounds by* 543 U.S. 1112 (2005); *see also United States v. Campbell*, 347 F.App'x 923, 930 (4th Cir. 2009); *accord United States v. Walker*, 155 F.3d 180, 188 (3d Cir. 1998); *United States v. Eltayib*, 88 F.3d 157, 173 (2d Cir. 1996). The statement was particularly benign here, as it was said in the context of summarizing the evidence that was actually presented.

The remaining three statements were also proper. When defense counsel launches an attack on the credibility of the government's witnesses, the government may respond to such

allegations by reassuring the jury that the witnesses were truthful. *Ollivierre*, 378 F.3d at 423; *see also Jackson v. United States*, 638 F.Supp.2d 514, 591-92 (W.D.N.C. 2009) (finding no ineffective assistance of counsel for failing to object to prosecutor's improper argument, where argument was an invited response to defense counsel's arguments). In this case, defense counsel made attacks on the credibility of the government's witnesses the central focus of his closing argument. Defense counsel began his argument, for instance, by arguing that the government's witnesses might have been reluctant to testify because:

> . . . they would be confronted with the fact
> that they lied on previous occasions and
> they would have to admit those lies in
> court. . . Or maybe they were reluctant
> because. . . you know, it's sort of like they're
> saying, you know, what we're saying is
> really not the truth.

(9/21/2001 Tr. 56-57). He then proceeded to address the witnesses individually. He suggested, for instance, that Carl Stevenson was biased because he did not like Ashe, and noted to the jury that Stevensen was "willing to lie to you about the very simple fact that they are not going to prosecute him for the marijuana." (*Id.* at 59-62). He also repeatedly called Maliqua Coppedge a liar and contended that even the government "knows she's a liar." (*Id.* at 63-65). He cast other witnesses

16

in the same light. (*See, e.g.,* *id.* at 65-66 ("So Jamal Jones came here and lies.")). In response, the government sought to confirm to the jury that the witnesses were indeed truthful. The comments were based solely on the government's view of the evidence. *See Buehl v. Vaughn*, 166 F.3d 163, 176 (3$^d$ Cir. 1999) ("These comments did not suggest to the jury that the prosecutor possessed evidence of guilt other than that which had been presented in open court."). In short, counsel's performance was not deficient in failing to object. *Oken v. Corcoran*, 220 F.3d 259, 269, 270 (4th Cir. 2000) ("[T]rial counsel was not constitutionally ineffective in failing to object to . . . certain remarks made by the prosecutors in their closing argument because it would have been futile for counsel to have done so, given the 'wide latitude' accorded counsel in making closing arguments, and given that the prosecutors' remarks, read in context, did not . . . infringe upon [the defendant]'s constitutional rights." (citations omitted)).

The failure to object would not amount to ineffective assistance even if Ashe could establish that his attorney was deficient, as he has not presented any evidence or allegation indicating prejudice. To the contrary, a jury is presumed to act in a manner consistent with its instructions. *United States v. Alerre*, 430 F.3d 681, 692 (4th Cir. 2005). The jury in this

case was instructed that the arguments of the attorneys were not evidence. (9/21/2001 Tr. at 12). The jurors were also told:

> You have had an opportunity to observe all of the witnesses. It is now your job to decide how believable each witness was in his or her testimony. *You are the sole judges of the credibility of each witness and of the importance of his or her testimony.*

(*Id.* at 24 (emphasis added)). The court then talked extensively about how the jury should make credibility determinations. (*Id.* at 24-28). Although these instructions might not have had the same force as immediate curative instructions issued at the time of the allegedly improper comments, they mitigate any harm that might have resulted from the government's arguments. There was no prejudice.

## 5. Failure to Pursue a Lesser Included Offense Instruction

In his last claim premised on ineffective assistance, Ashe alleges that his counsel acted unreasonably in not seeking a lesser included instruction on the first two counts of the indictment – both charging possession with intent to distribute. During jury deliberations, the jury sent out a note asking if they could "separate" the charges of possession and intent. (9/21/2001 Tr. 90). The court and counsel read the note to be a request for a lesser included instruction. Defense counsel, however, objected to any such instructions, saying, "[N]o one

18

asked for the lesser included offense, and it would be extremely difficult, given all my arguments were fashioned as it is an all or nothing argument. [I][n]ever even hinted that it was maybe just possession version possession with intent to distribute." (*Id.* at 91).[8]

The decision of trial counsel not to seek a lesser included instruction was reasonable strategy in this case. As trial counsel indicated to the court at the time the lesser included instruction was discussed, Ashe had never once attacked the intent element of the drug offenses. Instead, counsel's arguments focused on the possession element of the crime and sought to obtain an outright acquittal.[9] *See Washington v. United States*, 291 F.Supp.2d 418, 442 (W.D.Va. 2003) (finding failure to seek a lesser included instruction on simple

---

[8] Ashe says his counsel performed deficiently in objecting to "the court's decision to give a lesser included instruction requested by the jury during deliberation." The court, however, indicated that it did *not* plan to instruct the jury on the lesser included offense; defense counsel merely agreed with that determination.

[9] Indeed, as indicated in Ashe's arguments concerning his mother's testimony, he continues to maintain his outright innocence. *Cf. Nunez v. Conway*, 473 F.Supp.2d 465, 473 (S.D.N.Y. 2007) (rejecting ineffective assistance claim based on failure to pursue jury instruction where petitioner was "contemporaneously saying that he did not have the requisite intent to do harm and that the jury should have been given a charge that includes a required element of intent to do harm").

possession of cocaine was not ineffective assistance in case concerning possession with intent to distribute, where counsel made a strategic decision to pursue an "all-or-nothing" strategy).  Had counsel sought a lesser included instruction, it might have effectively presented the jury with two rather inconsistent scenarios:  the drugs were not Ashe's, but if they were, he did not intend to distribute them.  Trial counsel was not ineffective in choosing to pursue a consistent theory of the case.

### B.  Prosecutorial Misconduct

Ashe also asserts two claims of prosecutorial misconduct. The first of these relies on the same statements made in rebuttal already discussed in the ineffective assistance context.  The second contends that the government failed "to disclose to the defendant evidence favorable to the defense, concerning the firearm reports."  As the government observes, both of these claims have likely been procedurally defaulted, as they were not raised on direct appeal.  "In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains."  *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (quotation marks omitted).

Although Ashe conclusorily states that he "can" show cause and prejudice, he did not actually attempt to establish such cause or prejudice in any of his submissions.

But Ashe's claims are not barred just as a procedural matter; they also fail on their merits. As has already been discussed, the government's comments in rebuttal do not constitute prosecutorial misconduct. As for Ashe's second claim, he is correct that a conviction can be vacated if "the prosecution suppressed materially exculpatory evidence." *United States v. King*, 628 F.3d 693, 701 (4th Cir. 2011) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).[10] To obtain such relief, however, "a defendant must (1) identify the existence of evidence favorable to the accused; (2) show that the government suppressed the evidence; and (3) demonstrate that the suppression was material." *Id.* at 701. "[I]t is not enough simply to say that favorable evidence was withheld." *United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010). Nor does "[t]he mere possibility that an item of undisclosed information might have helped the defense . . . establish 'materiality' in

_____

[10] Although Ashe labeled his *Brady* claim "prosecutorial misconduct," "Government misconduct is not necessary for a *Brady* violation[,] . . . [as] inadvertent failures by the state to turn over material evidence favorable to the defendant can also be the basis of a *Brady* claim." *United States v. Vinyard*, 266 F.3d 320, 325 n.3 (2001).

the constitutional sense." *Kasi v. Angelone*, 300 F.3d 487, 504 (4th Cir. 2002) (quotation marks omitted).

Ashe has not even begun to satisfy any of the three requirements for establishing a *Brady* violation. Although he vaguely alludes to "firearms reports," he does not explain what report – or even what firearm – he is referring to. "It is simply impossible for a court to rule on an alleged *Brady* violation unless a defendant identifies with reasonable particularity the evidence to be considered." *United States v. Robinson*, 585 F.2d 274, 281 (7th Cir. 1978). He has not suggested why any "firearm report" would be favorable to him. Although he has vaguely stated that the government withheld the evidence, he provides no support or any other factual assertion in support. And perhaps most obviously, he has not established that the information is material. The record is entirely devoid of any indication that any firearm report was likely to have made "the difference between conviction and acquittal had it been disclosed and used effectively." *United States v. Wilson*, 624 F.3d 640, 661 (4th Cir. 2010) (quotation marks omitted). In sum, Ashe's claims of prosecutorial misconduct do not call for Section 2255 relief.

**C.    Violation of Sixth Amendment Rights: *United States v. Booker***

Finally, Ashe contends that the trial court violated his Sixth Amendment right to a trial by jury by using facts not by found a jury or admitted by Ashe to enhance his sentence. Were the court to construe Ashe's argument narrowly, it would certainly fail, as the Supreme Court's "Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence." *United States v. Battle*, 499 F.3d 315, 322 (4th Cir. 2007) (quoting *Rita v. United States*, 551 U.S. 338, 352 (2007)). The use of facts not found by a jury becomes problematic, for instance, when "the law *forbids* a judge to increase a defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede)," *Rita*, 551 U.S. at 352, or when facts not determined by a jury are used to increase the penalty beyond the statutory maximum, *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). If one grants Ashe's argument a more liberal construction, however, he might be attempting to argue that the former issue arose here because of the court's mandatory application of the Sentencing Guidelines. Such an argument relies on the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 245 (2005), wherein the court held that the Sentencing Guidelines violate

23

the Sixth Amendment to the extent they *require* courts to impose sentences based on facts not found by a jury.[11] Yet even this argument fails.

Shortly after the parties completed briefing on this motion, the Fourth Circuit decided *United States v. Morris*, 429 F.3d 65, 72 (4th Cir. 2005). In that case, the court conclusively determined that *Booker* does not apply retroactively. "Accordingly, the rule is not available for post-conviction relief for federal prisoners . . . whose convictions became final before *Booker* (or *Blakely*) was decided." *Id.* "Finality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). Ashe's petition for writ of certiorari was denied on October 6, 2003. Thus, his conviction was final long before the *Booker* decision was issued on January 12, 2005. Consequently, *Booker* does not apply in this context and there is no Sixth Amendment problem justifying relief.

---

[11] Ashe's appellate counsel, a federal public defender, also submitted a supplemental memorandum suggesting that *Booker* applies retroactively and requires that Ashe's sentence be vacated.

## IV. Conclusion

For the foregoing reasons, Ashe's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied. His motion to supplement will be granted, but his motion for discovery will be denied as moot. The government's motion to dismiss the motion for discovery will be granted.

Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of

reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quotation marks omitted). Upon its review of the record, the court finds that Ashe does not satisfy the above standard.

A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge